UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


LAWRENCE PAUL WEBB,

       Plaintiff,

                              Case No. 2:16-cv-0005
     vs.                      CHIEF JUDGE CRENSHAW
                              Magistrate Judge King

SOCIAL SECURITY ADMINISTRATION,

       Defendant.


To:  The Honorable Waverly D. Crenshaw, Jr., Chief Judge


## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383 for review of a final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and supplemental security income. This matter is before the Court on Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 13)("Motion for Judgment") and Memorandum in Support (Doc. 14), Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 16)("Response"), and the administrative record (Doc. No. 10).[1] For the following reasons, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. 13) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that **FINAL JUDGMENT** be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).

---

[1] Citations to pages in the Administrative Record will appear as "Tr. __."

1

## Introduction

Plaintiff filed his applications for benefits in August 2012, alleging that he has been disabled since July 20, 2010. The applications were denied initially and on reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ"). On August 12, 2014, Plaintiff, represented by counsel, appeared and testified at that hearing, as did Katharine R. Bradford, who testified as a vocational expert. In a decision dated November 5, 2014, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act at any time from his alleged date of onset of disability to the date of the administrative decision. Tr. 39-47. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 24, 2015. Tr.1.

## The Findings and Conclusions of the ALJ

In his decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2.   The claimant has not engaged in substantial gainful activity since July 20, 2010, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3.   The claimant has the following severe impairments: degenerative disc disease; osteoarthritis in his hands; carpal tunnel syndrome; hypertension; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is only able occasionally to climb ramps and stairs and ladders, ropes, and scaffolds; balance; stoop; kneel; crouch; or crawl. He is able to handle and finger with both hands frequently.

6. The claimant is unable to perform any past work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 11, 1956 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 41-42, 45-47.

## Plaintiff's Claims

Plaintiff asserts the following statement of errors:

1.The ALJ erred in giving "little weight" to the assessment of [Physician's Assistant] Gene Adams, Mr. Webb's treating provider.

2. The ALJ erred in rejecting the testimony of the Claimant

concerning his pain.

3. The ALJ's findings are internally inconsistent.

4. The ALJ erred in finding that Mr. Webb has frequent use of his hands.

Memorandum in Support (Doc. 14, PageID# 895-900).

## Standard of Review

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)(internal quotation marks and citation omitted). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Services*, 667 F.2d 524, 536 (6th Cir. 1982). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Commissioner Social Security Administration,* 402 F.3d 591, 595 (6th Cir. 2005)(citing *Warner v. Comm'r of Soc. Sec.,*

4

375 F.3d 387, 390 (6th Cir. 2004)). "[T]here is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)(quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

## Summary and ALJ's Evaluation of Relevant Evidence[2]

Plaintiff testified at the administrative hearing that pain in his back and hands are his greatest problems. He described his back pain as throbbing and constant. Tr. 60. He has difficulty stooping and squatting, and climbing stairs. Tr. 66. He could lift 10 pounds, but not repetitively, and up to 20 pounds with pain. Tr. 61. He can stand for 20 minutes at a time, and can sit for 30 minutes at a time. Tr. 68. His hands also hurt constantly, and he has little grip and has difficulty picking things up. Tr. 62-63. Pain medication helps "[s]lightly." Tr. 60. He takes hot showers and uses a TENS unit for his back. Tr. 67. He spends the biggest part of his time in his recliner. Tr. 69. He uses heated paraffin for his hands twice per day. Tr. 70. He acknowledged that he failed to appear for an EMG study scheduled for July 2014, but explained that his "transportation fell apart." Tr. 62. He could not remember failing to appear for an EMG study scheduled for June 2012. *Id.*[3]

Plaintiff has been treated for a number of years at the VA clinic in Cookeville for a variety of conditions, including pain in his back and hands. Clinic notes from March 2011 indicate that there was no

---

[2] The Court will refer to only that evidence relevant to the issues presented by Plaintiff.

[3] An EMG study was eventually conducted, but after the ALJ issued his decision. *See* Tr. 13. Results of that study were "consistent with bilateral very mild carpal tunnel syndrome." *Id*.

evidence of rheumatoid arthritis. Tr. 358. Plaintiff reported that
splints have helped the numbness and tingling in his hands, although
he still complained of pain in his fingers and numbness in his hands,
more severe in the left. *Id*. Plaintiff failed to appear for an EMG
study in June 2012. Tr. 351. An October 2012 MRI of the lumbar spine
revealed "[b]enign bony findings. . ." and mild multilevel disc
disease. Tr.368-69. X-rays of the hands showed moderate osteoarthritis
of multiple joints. Tr. 369.

In September 2012, Matthew D. Higgins, M.D., performed a
consultative examination of Plaintiff at the request of the state
agency. Plaintiff reported that he was taking no medication, Tr. 327,
and that he could lift 20 pounds, but could not do so repetitively.
Tr. 326. He could walk for 15 minutes at a time, stand for 20 minutes
at a time, and sit for 20 minutes at a time. *Id*. On clinical
examination, Dr. Higgins noted a normal gait and 5/5 strength in the
spine. Tr. 327. Carpal tunnel compression test was positive on the
left. Tr. 328. There was tenderness and decreased range of motion in
the MCP joints. *Id*. Range of motion in the spine, shoulders, hips,
knees, ankles, and wrists was normal. *Id*. According to Dr. Higgins,
Plaintiff

> is able to sit, stand, and move about. He had normal gross
> manipulation and grip strength. . . . However, repeat of
> his activities with his hands would likely aggravate his
> carpal tunnel syndrome. He is able to hear and speak
> appropriately. He has decreased vision in his left eye
> which would limit his ability to accommodate or see things
> quickly and adjust for them. He can carry out and remember
> instructions. He can stoop, crawl, and crouch; however,
> this, if prolonged, would likely aggravate his knee pain
> and his low back pain.

Tr. 328-29.

In October 2012, Michael Ryan, M.D., a state agency physician, reviewed the evidence of record and concluded that Plaintiff's severe impairments consist of carpal tunnel syndrome and osteoarthrosis, Tr. 80, but that Plaintiff has the residual functional capacity ("RFC") for medium exertion. Tr. 81. Plaintiff's history of carpal tunnel syndrome would limit his ability to finger and handle to "frequently." Tr. 82. In December 2012, Thomas Thrush, M.D., another state agency physician, also reviewed the record and reached the same conclusions. Tr. 107-113.

In December 2012, Gene Adams, a physicians' assistant who has treated Plaintiff for a number of years, completed a medical source statement of Plaintiff's ability to do work-related activities. Tr. 373-77. According to Mr. Adams, Plaintiff's chronic hand pain and chronic back pain would limit him to occasionally lifting and carryng less than 10 pounds, to standing and/or walking less than 2 hours and sitting about 4 hours in an 8-hour workday. Tr. 374-75. His ability to push and/or pull is severely limited in his upper extremities and moderately limited in his lower extremities. Tr. 375. Plaintiff would be required to frequently alternate between sitting and standing to relieve pain. *Id*. Plaintiff could never climb, crouch, or crawl; he could occasionally balance and kneel. Tr. 376. He was limited in his ability manipulate and could only occasionally reach, handle, finger, and feel. *Id.*

The vocational expert testified at the administrative hearing that a claimant with Plaintiff's vocational profile and the RFC found by the ALJ could perform Plaintiff's past work as well as other work

that exists in significant numbers in the national economy. Tr. 74. However, the vocation expert also testified that, if the claimant's use of hands was limited to occasional handling and fingering, that claimant could perform no jobs in the economy on a competitive basis. *Id*.

The ALJ gave "little weight" to the opinions of Mr. Adams and Dr. Higgins, but gave "great weight" to the opinions of Drs. Ryan and Thrush, the reviewing state agency physicians. Tr. 45.

**Discussion**

1.Physicians' Assistant Gene Adams

Plaintiff argues that the ALJ erred in failing to accord greater weight to the opinion of Gene Adams, Plaintiff's treating physicians' assistant. Mr. Adams opined that Plaintiff could occasionally lift less than 10 pounds, sit for approximately four (4) hours, stand or walk for less than two (2) hours, balance, kneel, reach, handle, and finger, and could never climb, crouch, or crawl. Tr. 374-77.

Physicians' assistants are not included in the list of acceptable medical sources found in the Commissioner's regulations. 20 C.F.R. §§404.1513(a), 416.913(a). The opinions of physicians' assistants, even those who treat a claimant, are therefore not entitled to the controlling weight or deference to which the opinions of treating physicians are ordinarily entitled. However, evidence from other sources, including physicians' assistants, may be considered "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work. . . ." 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). Among the factors to be considered in evaluating the

8

opinions of "other sources" are the length of time and frequency of treatment, consistency with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, whether the source has a special expertise, and any other factor supporting or refuting the opinion. SSR 06-03p, 2006 WL 2329939, *4 – 5 (August 9, 2006).[4]

The ALJ gave "little weight" to Mr. Adams' opinion, finding that the physicians' assistant

> significantly overstated lifting, carrying, sitting, standing, walking, and postural and reaching limitations, presumably primarily based on lumbar complaints that a benign lumbar MRI does not support.

Tr. 45. This assessment enjoys substantial support in the record. Indeed, in arguing that Mr. Adams' opinion warranted greater weight, Plaintiff points only to the MRI findings, *see* Memorandum in Support (Doc. 14, PageID# 896), which, as the ALJ noted, revealed only relatively benign findings.

2. Plaintiff's Testimony concerning His Pain

In assessing Plaintiff's subjective complaints of pain, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." Tr. 43. Plaintiff contends that this finding is not supported by substantial evidence. Memorandum in Support (Doc. 14, PageID# 898).

---

[4]Social Security Rulings are official interpretations of the Social Security statutes and regulations and are therefore binding on ALJs. *McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 834 (6th Cir. 2006). However, an ALJ need not "refer with specificity" to a ruling, so long as the ALJ conducts the analysis required by the ruling. *Id.*

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following factors:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996). The ALJ's credibility determination is accorded great weight and deference because of his unique opportunity to observe a witness's demeanor while testifying. *Buxton,* 246 F.3d at 773 (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978). *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support an opposite conclusion.").

According to Plaintiff, the ALJ based his credibility determination only on "Mr. Webb's failure to have nerve conduction studies[, although the] ALJ failed to note that the carpal tunnel surgery would not relieve the arthritis or 'crystal' in Plaintiff's hands." Memorandum in Support (Doc. 14, PageID# 899). This is a mischaracterization of the ALJ's evaluation of the evidence.

In assessing Plaintiff's subjective complaints, the ALJ recognized the appropriate standard, Tr. 42, and considered not only Plaintiff's failure to appear for two (2) scheduled EMG studies, Tr.

45, but also the fact that Plaintiff declined recommendations for carpal tunnel release surgery. *Id.* In addition, the ALJ considered the entirety of the medical evidence, including the relatively benign MRI findings, Dr. Higgins' findings of normal gait, range of motion, gross manipulation and grip strength, and ability to sit, stand, and move about, and the state agency physicians' assessments of the record. Tr. 43-45. The ALJ's credibility assessment is supported by substantial evidence and this Court is therefore without authority to disregard that assessment.

### 3.The ALJ's Reference to "Light Work"

Plaintiff complains that, although the ALJ found that Plaintiff has an RFC for a reduced range of medium work, *see* Tr. 42, the ALJ at one point in his decision also referred to an RFC for "light work." *See* Tr. 45 ("The claimant's current residual functional capacity for a restricted range of light work precludes return to this past work.")[5] Plaintiff complains that the decision of the ALJ is therefore internally inconsistent.

A fair reading of the ALJ's decision makes clear that this isolated reference to "light work" was a harmless typographical error. The ALJ referred to a reduced range of "medium work" throughout his decision, *see* Tr. 42, 45, and 46. He referred to the Guideline governing an RFC for "medium work." Tr. 46. He expressly asked the vocational expert to assume an RFC for a reduced range of medium work, Tr. 74, and the vocational expert's testimony, upon which the ALJ

---

[5] An RFC for "light work" in an individual who, like Plaintiff, is of advanced age would qualify that individual as disabled under the Medical-Vocational Guidelines. *See* Rule 202.04, 20 C.F.R., Pt. 404, Subpt. P., App. 2.

relied, was based on the assumption that the hypothetical claimant had an RFC for a reduced range of "medium work." *Id.* Under all these circumstances, the Court concludes that the ALJ's isolated typographical error does not require the reversal of the Commissioner's decision.

## 4.Plaintiff's Ability to Use His Hands

The ALJ found that Plaintiff "is able to use his hands frequently for handling and fingering." Tr. 45. The vocational expert testified that such a claimant with the RFC found by the ALJ could perform Plaintiff's past work as well as other work that exists in significant numbers in the national economy. Tr. 74. However, the vocation expert also testified that, if the claimant's use of hands was limited to occasional handling and fingering, that claimant could perform no jobs in the economy on a competitive basis. *Id.* Plaintiff complains that the ALJ's finding regarding Plaintiff's use of his hands lacks substantial support in the record.

Plaintiff testified that his hands "constantly hurt," Tr. 63, and that he has difficulty gripping and picking things up. Tr. 63-64, 69. However, and as the ALJ noted, Tr. 44-45, the consultative examiner, Dr. Higgins, found that Plaintiff exhibited normal gross manipulation and grip strength. The ALJ also noted that there was no evidence of rheumatoid arthritis affecting Plaintiff's hands, and that Plaintiff failed to attend two (2) scheduled EMG studies and declined recommendations for carpal tunnel release surgery. Finally, both state agency reviewing physicians – whose opinions were accorded "great weight" by the ALJ, Tr. 45 – opined that Plaintiff could use his hands

frequently. Tr. 82, 113. Under these circumstances, there is substantial evidence to support the ALJ's finding that Plaintiff is able to use his hands frequently for handling and fingering.

### Recommendation

In light of the foregoing, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. 13) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that **FINAL JUDGMENT** be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).

### Procedure on Objections

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for the objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"). Even when timely objections are filed, appellate review of issues not raised in those objections is waived.

*Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)). Filing only "vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

s/Norah McCann King
Norah M$^c$Cann King
United States Magistrate Judge

October 13, 2017